**ALLARD K. LOWENSTEIN INTERNATIONAL HUMAN RIGHTS PROJECT et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF HOMELAND SECURITY, Defendant.**

**Civ. No. 3:06CV1889 (MRK).**

United States District Court, D. Connecticut.

March 20, 2009.

Michael J. Wishnie, Robert Alan Solomon, Jerome N. Frank Legal Services, New Haven, CT, for Plaintiffs.

Lisa E. Perkins, U.S. Attorney's Office, Hartford, CT, for Defendant.

### *RULING AND ORDER*

MARK R. KRAVITZ, District Judge.

This case involves a request under the Freedom of Information Act (FOIA), 5

U.S.C. § 552 for certain records relating to an immigration enforcement program called "Operation Frontline." That program was implemented in the months leading up to the 2004 Presidential election and 2005 inauguration for the avowed purpose of disrupting potential terrorist activities. While it has taken much longer than anyone would have liked, the parties have now been able to resolve most of the issues raised in this case, facilitating the release to Plaintiffs of thousands of pages of documents. Based on the documents released, Plaintiffs contend that Operation Frontline, which was touted as an effort aimed at disrupting terrorists, was "little more than routine immigration enforcement." Pls.' Mem. in Opp'n to Second Mot. for Summ. J. [doc. # 118] at 2. According to the Department of Homeland Security (DHS), as a result of Operation Frontline, it arrested approximately 270 immigration status violators. *See* Mem. of DHS in Support of Renewed Mot. for Summ. J. [doc. # 109] at 5.

What remains at issue are a few classified documents that DHS withheld under Exemptions (b)(1), (b)(2)High, and (b)(7)(E), and a certain number of unclassified, Immigration and Customs Enforcement (ICE) Headquarters' policy documents that DHS withheld under Exemptions (b)(2)High and (b)(7)(E).[1] *See generally* 5 U.S.C. §§ 552(b)(1), (b)(2), (b)(7)(E). The parties agreed to submit the documents to the Court for its *in camera* inspection.

## I.

■ Before addressing those documents, however, the Court pauses to support Plaintiffs' concerns about the lack of specificity in the affidavits and *Vaughn* indices that DHS presented in this case. Since the Court has reviewed the docu-

ments *in camera*, the Court need not resolve that issue. But it is apparent that many of the descriptions of the documents are so vague and general that they are of little, or no, use to Plaintiffs or this Court. During oral argument, the Court attempted to give Plaintiffs a more fulsome description of each of the documents withheld. DHS must understand that affidavits and indices must be "relatively detailed" and nonconclusory to serve their intended purpose of providing the requester and the Court with a basis for determining whether the agency properly withheld certain information under FOIA's exemptions. *See Carney v. United States Dep't of Justice,* 19 F.3d 807, 812 (2d Cir.1994).

■ The Court is not willing to accept the agency's word that documents are predominantly internal or that if disclosed, the document would reveal ongoing law enforcement techniques and risk circumvention of the law. Instead, on a motion for summary judgment, it is DHS's responsibility to *demonstrate* that it has properly withheld documents by providing the Court and Plaintiffs with reasonably detailed descriptions of the documents and with specific, particularized explanations regarding the reasons for withholding each portion of the documents. It does not suffice to give a few examples, as DHS has done. And this is so, even if, as here, some of the information being withheld is classified information. *See Halpern v. Federal Bureau of Investigation,* 181 F.3d 279, 293 (2d Cir.1999) ("[B]lind deference is precisely what Congress rejected when it amended FOIA in 1974.").

While Ms. McGinnis's Second Declaration is an improvement upon prior submissions, it is still not sufficiently detailed to

---

**1.** Today, the Court also issued a ruling in this case involving documents withheld by the Federal Bureau of Investigation. *See* Ruling and Order (Mar. 20, 2009).

permit Plaintiffs to make responsible arguments regarding disclosure or the Court to make a reasoned decision concerning whether *each* document was properly withheld. *Compare* Mem. of Def. DHS in Supp. of its Mot. for Summ. J. [doc. # 70] Ex. 1 ("Declaration of Reba A. McGinnis") *with* Mem. of Def. DHS in Supp. of its Renewed Mot. For Summ. J. [doc. # 109] Ex. 1 ("Second Declaration of Reba McGinnis"). It is the Court's hope and expectation that in the future, DHS will provide more detail than it has to date in this case. As stated at the outset, however, the documents were submitted in their entirety to the Court for its *in camera* inspection, and so the Court had all of the information necessary to determine whether DHS properly invoked the exceptions to disclosure at issue. *See Halpern,* 181 F.3d at 292 ("With respect to *in camera* review, we adopted a restrained approach permitting such review where the record showed the reasons for withholding were vague ... or where it might be possible that the agency had exempted whole documents simply because there was some exempt material in them."). In addition, for each of the withholdings at issue, the Court has determined that there is no further reasonably segregable portion of any document at issue beyond that which the Court has ordered disclosed. *See* 5 U.S.C. § 552(b); *see also Sussman v. U.S. Mar-*

*shals Serv.,* 494 F.3d 1106, 1116 (D.C.Cir. 2007).

## II.

**Classified Documents.** Exemption (b)(1) provides that FOIA's broad provisions favoring disclosure do not apply to documents that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1).[2] DHS relies upon Executive Order 12958, as amended by Executive Order 13292, 68 Fed. Reg. 15315 (Mar. 25, 2003), which permits information to be classified as "top secret," "secret," or "confidential." The "secret" classification applies to information the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security; the "confidential" designation is used for information the unauthorized disclosure of which reasonably could be expected to cause damage to the national security.

 Having conducted an *in camera* review of the classified documents, which include the Clark and Forman memoranda and their attachments, the Court is satisfied that these documents were properly withheld under Exemption (b)(1).[3] *See, e.g., Morley v. Central Intelligence Agen-*

---

2. DHS was not the classifying agency with respect to the documents at issue. Instead, other agencies classified the documents. DHS has not submitted an affidavit from those agencies but instead relies on Ms. McGinnis, who states that DHS consulted these other agencies and was informed that the information in the documents remains classified. The Court need not, and does not, decide whether affidavits from the classifying agency are necessary where the agency withholding the documents is not the classifying agency, because Plaintiffs graciously chose not to press this issue and DHS offered, if

necessary, to supply such additional affidavits.

3. After oral argument, DHS released to Plaintiffs certain paragraphs from one page of an attachment to the Clark Memo after it received authorization from the original classifying agency that the information could be revealed. This Court's decision should not be interpreted to discourage further declassification review, and if portions of these documents are declassified, they should be provided to Plaintiffs.

cy, 508 F.3d 1108, 1123–24 (D.C.Cir.2007); *Wolf v. Central Intelligence Agency*, 473 F.3d 370, 375–76 (D.C.Cir.2007); *El Badrawi v. Dep't of Homeland Security*, 596 F.Supp.2d 389, 394–95 (D.Conn.2009). The documents refer to sources of intelligence, recite specific information received from those sources, include a matrix of specifically-identified tasks along with the dates for completion of those tasks, and describe the specific manner in which intelligence gathered during the operation will be used. Many of the paragraphs are labeled "S" for secret or "LES," for law enforcement sensitive. Furthermore, to the extent that portions of these two memoranda do not contain classified information (and that is not obvious to the Court), the Court is satisfied that the information contained in the documents is either predominantly internal or compiled for law enforcement purposes, and that release of this information could risk disclosure of ongoing law enforcement techniques and circumvention of the law such that withholding under Exemptions (b)(2)High and (b)(7)(E) is proper.

Accordingly, DHS properly withheld the classified documents from disclosure to Plaintiffs. The Court will return the classified documents to the Assistant U.S. Attorney, who should retain the documents for submission to the Second Circuit in the event of an appeal.

### III.

**Unclassified Documents.** DHS withheld the unclassified documents under Exemptions (b)(2)High and (b)(7)(E).[4] The Court has previously had occasion to describe these exemptions and refers readers to the Court's prior decision for a statement of the general principles governing these withholdings. *See Unidad Latina*

*En Accion v. U.S. Dep't of Homeland Security*, 253 F.R.D. 44, 47, 49 (D.Conn. 2008).

Of course, the devil is always in the details, not the general principles. Plaintiffs argue that since Operation Frontline is now long since terminated and since much of the information about the program is already well known, there is no reason to believe that disclosure of the withheld documents will disclose investigative techniques. They also contend that to the extent the withheld documents contain generalized information about the program's policy, rather than specific day-to-day operational details, the documents should be disclosed since they would not threaten future law enforcement actions. *See, e.g., National Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir.2005); *Caplan v. Bureau of Alcohol, Tobacco & Firearms*, 587 F.2d 544, 548 (2d Cir.1978); *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1073 (D.C.Cir.1981) (en banc). That approach is consistent, say Plaintiffs, with FOIA's presumption favoring broad agency disclosure. *See Wood v. FBI*, 432 F.3d 78, 83 (2d Cir.2005). Relying on many of the same decisions, DHS, on the other hand, asserts that it still uses many of the techniques that are described in the withheld documents and that therefore, disclosure of the records would jeopardize ongoing law enforcement actions. *See, e.g., Gordon v. FBI*, 388 F.Supp.2d 1028, 1035–36 (N.D.Cal.2005); *Pully v. Internal Revenue Serv.*, 939 F.Supp. 429, 438 (E.D.Va.1996); *Hammes v. U.S. Customs Serv.*, No. 94 CIV 4868, 1994 WL 693717, at *1 (S.D.N.Y. Dec. 9, 1994).

With these arguments and cases in mind, the Court assesses each of the with-

---

4. DHS also withheld certain portions of the Headquarters' policy documents under Exemption (b)(7)(C), but Plaintiffs do not contest those redactions. *See, e.g., docs.* 5–1, 5–2, and 14.

held documents below. If DHS's counsel has any questions about which portions of the following documents the Court has ordered DHS to release, counsel should contact Chambers.

### Documents 3–1 to 3–13

This record consists of what appears to be Power Point slides that were used during a closed-door briefing for the Subcommittee on Immigration, Border Security and Claims on November 10, 2004. Despite the closed-door nature of this briefing, DHS has released most of these documents. In addition, after oral argument, DHS made a supplemental release to Plaintiffs regarding this series of documents. However, it has continued to partially or entirely withhold certain slides under Exemptions (b)(2) High and (b)(7)(E).

■ Document 3–5 concerns the development of target profiles under Operation Frontline and the application of these profiles to certain persons identified via law enforcement efforts. Given the wealth of information already disclosed to Plaintiffs about this program, the Court finds that the general outline of the operational steps is sufficiently broad that this information, if disclosed, would not reveal specific operational techniques or risk circumvention of the law. Thus, the Court orders DHS to reveal the four bulleted headings. However, the Court finds that DHS has properly withheld the information following each of these headings under Exemption (b)(7)(E) since the information was compiled for law enforcement purposes and if disclosed, could reveal certain investigative techniques that may risk circumvention of the law.

■ Document 3–6 outlines DHS's coordination with other agencies to further its law enforcement efforts. DHS has conceded that the FBI's involvement in Operation Frontline is already well known to Plaintiffs as a result of this litigation. *See,*

*e.g.,* Mem. of Def. Dep't of Justice, FBI, in Supp. of Mot. for Summ. J. [doc. # 92] Ex. 1H (Revised Declaration of David M. Hardy, setting forth FBI-released records concerning Operation Frontline). Although DHS seeks to withhold the identification of other agencies participating in Operation Frontline, it has failed to demonstrate that this information is predominantly internal or reveals investigative techniques or procedures that if disclosed, would risk circumvention of the law. In addition, the Court finds that the second heading concerning information-sharing between DHS and the FBI was improperly withheld because this information has already been disclosed to Plaintiffs and moreover, because it reveals no specific information that if disclosed, could reasonably risk circumvention of the law. Thus, DHS is ordered to provide Plaintiffs with all of the information contained in Document 3–6.

■ After its supplemental release of Document 3–7, which was initially withheld from Plaintiffs in its entirety, DHS has continued to withhold only two enforcement initiatives from the list otherwise provided on this page. DHS has not explained why disclosure of those initiatives would risk future law enforcement actions, and the Court has a difficult time understanding how the mere disclosure of a past operation could jeopardize future operations. Therefore, DHS should disclose the other two initiatives set forth on this document.

■ Document 3–9 describes the two major elements of Operation Frontline. The Court finds that DHS improperly withheld this information under Exemptions (b)(2)High and (b)(7)(E) since it is sufficiently general information about the program that if disclosed, could not reasonably be expected to undermine law enforcement efforts and result in circumvention of the law. Unlike other information

that DHS has withheld, this information does not reveal its methods for establishing priority levels or the specific intelligence coordination used to identify potential targets of the agency's enforcement efforts. The Court therefore orders DHS to disclose this page to Plaintiffs.

After a supplemental release to Plaintiffs, Document 3–11 is redacted only to withhold specific identifying information about a particular individual as well as the name of a specific database employed by DHS during its enforcement efforts. Plaintiffs do not seek the specific identifying information withheld under Exemption (b)(7)(C), and the Court finds that the specific reference to the database used as a lookout was properly withheld under Exemption (b)(7)(E) since this information was compiled for law enforcement purposes, and if disclosed, could reasonably be expected to risk circumvention of the law.

### Documents 6–1 to 6–4

This record is a memorandum dated September 24, 2004 from Marcy M. Forman, Acting Director of the Office of Investigations, to all special agents in charge and all deputy assistant directors regarding Operation Frontline. In that respect, the document on its face is predominantly internal; it also appears to be compiled for law enforcement purposes. *See Crooker,* 670 F.2d at 1073 (describing "predominantly internal" as information that is "designed to establish rules and practices for agency personnel, i.e., law enforcement investigatory techniques," "involves no 'secret law' of the agency," and "would risk circumvention of agency regulations" if disclosed); *Morley v. CIA,* 508 F.3d 1108, 1129 (D.C.Cir.2007) (noting "guidelines, techniques, sources, and procedures for law enforcement investigations and prosecutions" as possibly subject to Exemption (b)(7)(E)). The central issue here, as it is so often with these documents, is whether

disclosure of the redacted portions of this memorandum would disclose law enforcement techniques or provide information to those who would seek to evade DHS operations.

As an initial matter, counsel for DHS has wisely agreed that the references in this document to its cooperation with the FBI, all of which have been masked, should be disclosed. There is no reason to withhold information about that cooperation, particularly since the FBI itself has disclosed documents stating that it cooperated with DHS in Operation Frontline. *See, e.g.,* Mem. of Def. Dep't of Justice, FBI, in Supp. of Mot. for Summ. J. [doc. # 92] Ex. 1H (Revised Declaration of David M. Hardy, setting forth FBI-released records concerning Operation Frontline).

Unlike the information concerning the DHS–FBI cooperation that DHS now agrees should be released to Plaintiffs, the bottom of Document 6–1 contains partial redactions to specific information about sources for DHS leads. The Court is satisfied that DHS properly withheld this specific information because it is either predominantly internal or compiled for law enforcement purposes and its disclosure could risk circumvention of the law. However, most of Document 6–2, with the exception of its final paragraph, is sufficiently general in nature and relates to other information that has already been disclosed. In addition, DHS properly withheld two specific references on this page to specific investigative techniques and databases that if disclosed, could risk circumvention of the law. These references include the information redacted from lines four and five of the first paragraph of Document 6–2, as well as the third full sentence of paragraph two of that page. However, the Court believes that DHS's withholding of all but the final

paragraph of this document and the two aforementioned redactions is improper under Exemptions (b)(2)High and (b)(7)(E).

 The excepted paragraph includes the description of the specific criteria that DHS used to rank Priority I, II, and III-level cases. That DHS ranked its leads—and even that it divided these leads and cases into three groupings—is well known. What is not known is the specific criteria used to rank the cases and the precise number of cases under each priority level. Yet, that is the information set forth at the bottom of Document 6–2 and the top of Document 6–3. The Court is persuaded that release of that information would disclose law enforcement techniques and could be of assistance to those who wish to evade future immigration enforcement operations. *Cf. Schwarz v. Dep't of Treasury*, 131 F.Supp.2d 142, 150 (D.D.C.2000) (exempting from disclosure characteristics used by the Secret Service to determine an individual's threat potential); *Unger v. District Disclosure Office*, No. 1:99CV698, 2000 WL1009493, at *4 (N.D.Ohio Mar. 28, 2000) (withholding threshold levels established for tax prosecutions).

 As to the balance of Document 6–3, the Court has already discussed DHS's cooperation with the FBI, and DHS made a supplemental, partial release to Plaintiffs disclosing this coordination. The information that DHS has continued to withhold primarily addresses the specific delegation of tasks and resources between ICE and the FBI. Although this information *may* have been subject to withholding under Exemption (b)(7)(E), the Court finds that DHS improperly withheld this information under Exemption (b)(2)High since it is not predominantly internal to DHS. Thus, with the exception of the redacted portion of the sentence beginning with

"The Frontline POC or designee …," which the Court finds was properly withheld under Exemption (b)(2)High because it is predominantly internal to DHS and if disclosed, could risk circumvention of the law, the Court orders disclosure of the remaining information in Section IV to Plaintiffs. The Court notes that DHS has already provided Plaintiffs with some of this information by way of its partial release of Document 19–2. The final section of this document concerns the specific reporting requirements associated with arrests made under Operation Frontline. DHS has withheld only the specific network location for documenting these reports. The Court finds that this limited withholding was proper under the claimed exemption.[5]

### Documents 7–1 to 7–2

These documents consist of an internal standard operating procedure for Operation Frontline and were withheld in full. DHS properly withheld these documents under Exemption (b)(2)High, and at oral argument, Plaintiffs acknowledged as much.

### Document 8

This document sets forth only the specific criteria for the three priority levels discussed above. DHS properly withheld it in full for the reasons already discussed.

### Documents 10–1 to 10–2

 These documents consist of a memorandum to "Front Line POC's" that DHS withheld in full. Much of the memorandum deals with the criteria for priority leads and internal assignments and therefore, was properly withheld. However, the second to last paragraph in Document 10–2 discusses "negative [press] reporting" about Operation Frontline. All but the

---

**5.** Document 6–4 contains names and telephone numbers withheld under Exemptions (b)(2) Low and (b)(7)(C). Plaintiffs do not seek this information.

last two sentences of that particular paragraph, which discuss specific operational details, should be disclosed to Plaintiffs since the Court does not see how a discussion of Operation Frontline press coverage could disclose law enforcement techniques or be useful to those seeking to evade the agency's efforts. Thus, the first portion of the second to last paragraph of Document 10–2 was improperly withheld under Exemptions (b)(2)High and (b)(7)(E).

### Document 11

DHS disclosed this document in its entirety with the exception of a brief discussion of the specific criteria for priority leads. As the Court has already explained, DHS properly redacted this information.

### Documents 12–1 to 12–2

■ This record is either a draft or final memorandum from Michael Garcia, Assistant Secretary of Immigration and Customs Enforcement (ICE) to Tom Ridge, Secretary for DHS regarding Operation Frontline. After a supplemental release, DHS disclosed the memorandum with three redactions. The Court finds that the partial redactions to the first paragraph of Document 12–1 were proper because the information, if disclosed, could reasonably be expected to risk circumvention of the law. However, as to DHS's second withholding—which includes the final portion of the carryover paragraph from Document 12–1 to 12–2—the Court finds that further information within that paragraph is reasonably segregable from properly redacted information and should therefore be disclosed to Plaintiffs. Thus, DHS is ordered to release to Plaintiffs all words up to and including "its leads on immigration status violators." The remaining portion of that sentence and the information that follows it in the carryover paragraph should remain redacted because it refers to specific criteria for priority leads, which the Court has previously discussed as properly redacted. However, the final reference to "Priority I arrests" is not subject to withholding and should be disclosed to Plaintiffs because the Court is not convinced that this reference to priority levels would disclose law enforcement techniques or be useful to those seeking to evade the agency's efforts.

### Documents 13–1 to 13–2

This is a two-page memorandum from Mr. Garcia to Secretary Ridge. Again, it is not clear if this is a different version of Documents 12–1 and 12–2, though it contains somewhat different information. DHS disclosed this memorandum with few redactions. DHS also made a supplemental release of these documents, which partially disclosed information previously redacted from Document 13–1. The Court finds the remaining redactions to Document 13–1 were proper for the same reasons articulated with respect to Documents 6–1, 12–1, and 12–2. The redactions on Document 13–2 are appropriate because they again discuss the specific criteria for priority leads. However, the redacted information following the bulleted points— which include references to priority levels I and II and investigative leads—is not subject to withholding under Exemptions (b)(2)High and (b)(7)(E) for the same reasons articulated with respect to Document 12–2.

### Documents 15–1 to 15–3

■ DHS initially withheld this set of documents, which consist of a letter from DHS to the FBI, in their entirety but made a supplemental release to Plaintiffs following oral argument. The Court believes that DHS properly redacted the bulleted items on Documents 15–1 and 15–2. The bulleted items discuss specific tasks that DHS and the FBI agreed to accomplish during Operation Frontline and

therefore, were properly withheld under Exemption (b)(7)(E) because they were compiled for law enforcement purposes and if disclosed, would reveal specific law enforcement techniques and could reasonably be expected to risk circumvention of the law. In addition, the Court concludes that the portion of the first sentence redacted on Document 15-1 was properly withheld under Exemption (b)(7)(E) because it refers to specific data sets that the FBI sought from DHS and constitutes information that if disclosed, could reasonably risk circumvention of the law.

### Documents 16-1 to 16-6

DHS originally withheld documents 16-1 to 16-6 in their entirety, but has since released portions of Documents 16-4 to 16-6 to Plaintiffs. DHS has withheld documents 16-1 to 16-3, but these documents are essentially identical to Documents 16-4 to 16-6, and the Court's ruling thus addresses both sets of documents, allowing the same redactions in each document set but requiring DHS to disclose the previously withheld portions of Documents 16-1 to 16-3 that the Court finds are not subject to withholding.

The supplemental release of Documents 16-4 to 16-6 makes many disclosures, and the information that DHS does withhold primarily addresses the detailed purposes of and procedures associated with the Operation Frontline "Detained Alien Interview Initiative." The Court finds that the redactions to the first paragraph of Document 16-4 were proper under Exemptions (b)(2)High and (b)(7)(E) because the information is predominantly internal and compiled for law enforcement purposes, and if disclosed, could risk circumvention of the law. For the same reasons, the Court finds that DHS's withholding of a portion of the first sentence of the last paragraph of Document 16-4 was proper. However, given that DHS has disclosed to Plaintiffs the full name of the initiative as well as the italicized paragraph on Document 16-5 that references "potential interviews," the Court sees no justification for withholding specific references to "interviews" and thus orders DHS to disclose the two partial redactions contained in the remainder of that paragraph.

The Court finds that DHS properly redacted the first paragraph of information following "Procedures," because the information is predominantly internal to DHS and discusses the means for generating investigative leads, and if disclosed, could risk circumvention of the law. For the reasons articulated with respect to Document 16-4, DHS's first redaction to the second paragraph following "Procedures" was improper. However, with one more exception, DHS properly withheld the remaining information under "Procedures" because it discusses specific investigative techniques that if disclosed, could risk circumvention of the law. The one additional exception is the redaction of "schedule the interview of the alien" in the second to last paragraph of Document 16-5. This redaction was improper for the reasons already discussed.

As to the redactions to Document 16-6, the Court finds that DHS's withholdings were proper under the claimed exemptions because the information is predominantly internal to DHS or compiled for law enforcement purposes, concerns the specific procedures to be followed regarding the Initiative, and if disclosed, could reasonably be expected to risk circumvention of the law.

### Document 17

This document, which is an interim standard operating procedure for DHS was, as Plaintiffs acknowledged at oral argument, properly withheld.

### Documents 19–1 to 19–2

DHS initially withheld much of this two-page record, but made a supplemental, partial release of Document 19–2 following oral argument. The Court concludes that DHS's continued withholding of the remaining portions of these documents was proper under Exemptions (b)(2)High and (b)(7)(E) because the withholdings concern information predominantly internal to DHS or information compiled for law enforcement purposes that if disclosed, could reasonably be expected to risk circumvention of the law or assist those attempting to evade ICE's enforcement efforts.

### Documents 20–1 to 20–13

This record consists of what appears to be Power Point slides that were used during a briefing for Secretary Ridge on November 5, 2004. The information that DHS withheld from Plaintiffs after its supplemental release corresponds to identical information that this Court already ruled on in its discussion of Documents 3–1 to 3–13. For the same reasons, the Court orders a partial release of Document 20–5 (which corresponds its ruling on Documents 3–5), and a full release of Documents 20–6, 20–8, and 20–9 (which corresponds to its ruling on Documents 3–6, 3–7, and 3–9). Consistent with the Court's ruling on Document 3–11, the Court finds that DHS's continued withholding of certain information in Document 20–11 is proper.

### IV.

For the foregoing reasons the Court GRANTS IN PART and DENIES IN PART DHS's Renewed Motion for Summary Judgment [doc. # 108]. As the parties represented to the Court at oral argument, the Court's ruling on this motion concludes all remaining aspects of this case. The Clerk is therefore directed to enter final judgment and close this file.

IT IS SO ORDERED.