**09-2225-cv**
**Lowenstein v. Dept. of Homeland Sec.**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

------------

August Term, 2010

(Argued: August 31, 2010          Decided: November 22, 2010)

Docket No. 09-2225-cv

- - - - - - - - - - - - - - - - - - - - - - - X

ALLARD K. LOWENSTEIN INTERNATIONAL HUMAN RIGHTS PROJECT, and
JEROME N. FRANK LEGAL SERVICES ORGANIZATION,

Plaintiffs-Appellants,

- against -

DEPARTMENT OF HOMELAND SECURITY, and
UNITED STATES DEPARTMENT OF JUSTICE,

Defendants-Appellees,

DEPARTMENT OF STATE, and
EXECUTIVE OFFICE OF THE PRESIDENT,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - X

Before:   RAGGI and LYNCH, Circuit Judges, and
          RAKOFF, District Judge.[*]

    Appeal from the March 23, 2009 judgment of the United States
District Court for the District of Connecticut (Mark R. Kravitz,
Judge), granting partial summary judgment to defendants, in
Freedom of Information Act action, on the ground that the
information at issue is exempt from disclosure under 5 U.S.C. §

---

[*]The Honorable Jed S. Rakoff, United States District Judge
for the Southern District of New York, sitting by designation.

552(b)(7)(E).  AFFIRMED.

SAURABH SANGHVI, (Michael Wishnie, Hope Metcalf, Daniel Mullkoff, Jennifer Chang, on the brief), for Plaintiff-Appellant.

IAN J. SAMUEL (Nora R. Dannehy, United States Attorney for the District of Connecticut, Lisa E. Perkins, Sandra S. Glover, Susan Scott, on the brief), for Defendants-Appellees.

RAKOFF, District Judge.

Plaintiffs-Appellants, the Allard K. Lowenstein International Human Rights Project and the Jerome N. Frank Legal Services Organization (collectively, "the Project"), appeal the district court's partial grant of summary judgment to Defendant-Appellee, the Department of Homeland Security ("DHS"). Having determined that the DHS properly withheld certain portions of a 2004 memorandum under Exemption (b)(7)(E) of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(7)(E), the Court hereby affirms the decision of the district court.

**BACKGROUND**

In the months preceding the 2004 presidential election and 2005 inauguration, U.S. Immigration and Customs Enforcement ("ICE"), a division of DHS, undertook "Operation Front Line" for the stated purpose of identifying and preventing potential terrorist activities that were anticipated in connection with those events.  See  Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec., 603 F. Supp. 2d 354, 360 (D.

Conn. 2009).  The Project claims, however, that Operation Front Line, in dragnet fashion, indiscriminately targeted men from Muslim-majority countries and charged them with minor immigration violations.  The Project has sought through FOIA to obtain internal government documents that the Project believes may reveal governmental misconduct of this kind.

This appeal concerns the Project's request under FOIA for one of these documents: a September 2004 memorandum regarding Operation Front Line issued to special agents and deputy assistant directors by Mary Forman, the Acting Director of ICE's Office of Investigations.  Although most of this "Forman Memorandum" was furnished to the Project, portions of a few paragraphs of the Forman Memorandum that describe three "priorities" for investigation were redacted.[1]

At the outset, it should be noted that these very modest redactions are all that remain in dispute of much broader requests for information that were materially granted, largely on consent.  The Project's two initial FOIA requests, submitted to

_____

[1] Priority 1 cases, the highest priority, were investigated with the assistance of the FBI and its Joint Terrorism Task Force.  Priority 2 cases, the middle priority, consisted of suspected immigration status violators meeting the "Front Line threat profile," and were sometimes investigated with the assistance of local FBI agents depending on the potential source recruitment and intelligence value of the targets.  Priority 3 cases, the lowest priority, were generally investigated by ICE agents without FBI assistance.

DHS in October 2006, broadly sought information related to Operation Front Line, much of which was at first denied; but after the Project filed this action in the district Court on November 21, 2006, the parties entered into two stipulations, pursuant to which DHS released thousands of pages of such documents.  The Project then moved for release of the remaining requested documents.  After reviewing unredacted documents in camera, the district court ordered the release of many but not all of the remaining documents.  Then, after the Project filed this appeal, DHS voluntarily released most of the information that remained in dispute.  Accordingly, the information the Project now seeks consists simply of a paragraph describing "Priority 1" and several redacted lines under "Priority 2."[2]

**DISCUSSION**

We review a district court's grant of summary judgment in a FOIA action de novo. Wood v. FBI, 432 F.3d 78, 82 (2d Cir. 2005).

The district court determined that DHS properly withheld the redacted portions of the Forman Memorandum under FOIA Exemptions (b)(2) and (b)(7)(E).[3]  We need not here consider whether

_____

[2] At the beginning of this appeal, the Project also disputed the withholding of two other words indicating the numbers of Priority 2 and 3 cases.  However, during oral argument before this Court, the Project stated that it no longer disputed DHS's right to withhold this information.

[3] Although the district court did not specifically cite the exemptions it applied, its conclusion that "DHS properly withheld th[e] specific information because it is either predominantly

-4-

Exemption (b)(2) applies because we conclude that the district court properly applied Exemption (b)(7)(E). Exemption (b)(7)(E) exempts from disclosure:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law . . . .

5 U.S.C. § 552(b)(7)(E).

The Project first argues that the redacted information in the Forman Memorandum constitutes "guidelines" rather than "techniques and procedures." Since Exemption (b)(7)(E) provides that law enforcement guidelines may only be withheld if their disclosure "could reasonably be expected to risk circumvention of the law," the Project contends that the information at issue could not reasonably be expected to engender such a risk and therefore must be released to the Project.

In the alternative, the Project argues that even if the redacted information relates to "techniques and procedures," the qualifier at the end of the clause allowing non-disclosure only "if such disclosure could reasonably be expected to risk

---

internal or compiled for law enforcement purposes and its disclosure could risk circumvention of the law" indicates that it applied Exemption (b)(2) and Exemption (b)(7)(E). See Lowenstein, 603 F. Supp. 2d at 364.

circumvention of the law" applies not just to "guidelines" but also to "techniques and procedures," and, accordingly, DHS still must release the information.

We reject these arguments. Beginning, as we must, with the plain meaning of the statute's text and structure, we see no ambiguity. See Dobrova v. Holder, 607 F.3d 297, 301 (2d Cir. 2010) ("Statutory analysis necessarily begins with the plain meaning of the law's text, and, absent ambiguity, will generally end there." (internal quotation marks omitted)). The sentence structure of Exemption (b)(7)(E) indicates that the qualifying phrase ("if such disclosure could reasonably be expected to risk circumvention of the law") modifies only "guidelines" and not "techniques and procedures." This is because the two alternative clauses that make up Exemption 7(E) are separated by a comma, whereas the modifying condition at the end of the second clause is not separated from its reference by anything at all. Thus, basic rules of grammar and punctuation dictate that the qualifying phrase modifies only the immediately antecedent "guidelines" clause and not the more remote "techniques and procedures" clause. See Barnhart v. Thomas, 540 U.S. 20, 26 (2003) (citing "the grammatical 'rule of the last antecedent'").

Any potential ambiguity in the statute's plain meaning is removed, moreover, by the history of the statute's amendments. See, e.g., Slayton v. Am. Express Co., 604 F.3d 758, 770-71 (2d

Cir. 2010) ("[W]here we find ambiguity we may delve into other sources, including the legislative history, to discern Congress's meaning."). Prior to 1986, the second clause did not exist and the exemption consisted of "investigatory records compiled for law enforcement purposes" to the extent that their production would "disclose investigative techniques and procedures," without any further qualification. 5 U.S.C. § 552(b)(7)(E) (1976). When Congress enacted the current version of the statute in 1986, it expanded the scope of Exemption 7(E) by adding the entire second clause (including the modifier), thereby exempting "guidelines" from disclosure only if public access to such guidelines would risk circumvention of the law. See Pub. L. No. 99-570 § 1802(a), 100 Stat. 3207, 3207-48 to -49 (1986); see also S. Rep. No. 98-221, at 25 (1983) ("The amendment also expands (b)(7)(E) to permit withholding of 'guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.'"); American Civil Liberties Union v. Dep't of Def., 543 F.3d 59, 79 (2d Cir. 2008) ("Exemption 7(E) was expanded to allow agencies to withhold information that would disclose law enforcement guidelines - in addition to the already protected techniques and procedures - if disclosure of the guidelines could reasonably be expected to risk circumvention of the law." (internal quotation marks omitted)), vacated on other grounds and remanded, 130 S.

-7-

Ct. 777 (2009); Keys v. Dep't of Homeland Sec., 510 F. Supp. 2d 121, 129 (D.D.C. 2007) (concluding that "first clause of Exemption 7(E) provides categorical protection for techniques and procedures" without need for "demonstration of harm" (internal quotation marks omitted)); Fischer v. U.S. Dep't of Justice, 772 F. Supp. 7, 12 n.9 (D.D.C. 1991) (noting that amendment to Exemption (7)(E) provided "categorical protection" to techniques and procedures), aff'd, 968 F.2d 92 (D.C. Cir. 1992). The fact that the two clauses of the statute were introduced at different times (the first clause in 1974 and the second clause in 1986) and that the modifying language (requiring disclosure unless "such disclosure could reasonably be expected to risk circumvention of the law") was not part of the first clause as it was originally enacted reinforces the conclusion that the modifying language should be read as attaching only to the new basis for exemption that was created along with it.

The argument that the redacted information constitutes "guidelines" information, instead of information about "techniques and procedures," requires us to address the difference between the two categories. While difficulties may arise in unusual cases, the basic distinction is apparent. The term "guidelines" -- meaning, according to Webster's Third New International Dictionary (1986), "an indication or outline of future policy or conduct" -- generally refers in the context of

-8-

Exemption 7(E) to resource allocation.  For example, if a law enforcement agency concerned with tax evasion directs its staff to bring charges only against those who evade more than $100,000 in taxes, that direction constitutes a "guideline."  The phrase "techniques and procedures," however, refers to how law enforcement officials go about investigating a crime.  See Webster's Third New International Dictionary (1986) (defining "technique" as "a technical method of accomplishing a desired aim"; and "procedure" as "a particular way of doing or of going about the accomplishment of something").  For instance, if the same agency informs tax investigators that cash-based businesses are more likely to commit tax evasion than other businesses, and therefore should be audited with particular care, focusing on such targets constitutes a "technique or procedure" for investigating tax evasion.  Our in camera review of the entire Forman Memorandum leads us to conclude that the redacted portions constitute "techniques and procedures" for law enforcement investigation.

Because we find that DHS properly withheld the information under Exemption (b)(7)(E), we need not consider the other arguments put forth by the Project.  Accordingly, the judgment of the district court granting partial summary in favor of DHS is hereby AFFIRMED.