**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 23-1910**

FABIAN GREY,

              Plaintiff – Appellant,

        v.

ANGELICA ALFONSO-ROYALS, Acting Director, United States Citizenship and
Immigration Services,

              Defendant – Appellee.

Appeal from the United States District Court for the District of South Carolina, at Beaufort.
David C. Norton, District Judge.  (9:18-cv-01764-DCN)

Argued:  September 27, 2024                    Decided:  June 10, 2025

Before NIEMEYER, THACKER, and RUSHING, Circuit Judges.

Affirmed by published opinion.  Judge Rushing wrote the opinion, in which Judge
Niemeyer and Judge Thacker joined.

**ARGUED:**  Bradley Bruce Banias, BANIAS LAW LLC, Charleston, South Carolina, for
Appellant.  Victor Manuel Mercado-Santana, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Brian M. Boynton, Principal
Deputy Assistant Attorney General, William C. Peachey, Director, Samuel P. Go, Assistant
Director, Office of Immigration Litigation, Civil Division, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

RUSHING, Circuit Judge:

Appellant Fabian Grey, a citizen of Jamaica and lawful permanent resident in the United States, applied for naturalization. After substantial delay in a decision on his application, Grey filed this lawsuit asking the district court to declare him eligible for naturalization and order the United States Citizenship and Immigration Services (USCIS) to naturalize him. Grey also sought documents from USCIS under the Freedom of Information Act (FOIA) and amended his lawsuit to request court action compelling USCIS to produce those documents. The district court ultimately granted summary judgment to USCIS on both claims. USCIS produced substantial documentation responding to Grey's FOIA request, and the court determined the agency was entitled to withhold or redact certain documents under the statute's law enforcement exemption. As for naturalization, the court concluded Grey was ineligible for citizenship because he lied under oath during his deposition in this case. Grey appealed each ruling, and we affirm.

I.

Grey first entered the United States in 2004 on a work visa. Two years later, he married a United States citizen, and eventually he became a lawful permanent resident. On February 17, 2016, Grey applied for naturalization. USCIS conducted his naturalization interview in September 2017 and a home visit in June 2018. During the home visit, Grey became concerned that USCIS suspected him of marriage fraud.

Having received no decision from the agency on his application, Grey filed this lawsuit against the director of USCIS on June 27, 2018. Grey asked the district court to declare him eligible for naturalization and order USCIS to naturalize him pursuant to 8

2

U.S.C. § 1447(b). Around the same time, Grey also submitted a FOIA request to USCIS, seeking information about his immigration file and documents related to the agency's methods and practices for investigating marriage fraud. When USCIS did not respond to his inquiry for two months, Grey amended his complaint to add a claim seeking an order compelling USCIS to respond to his pending FOIA request pursuant to 5 U.S.C. § 552(a)(4)(B).

## A.

The parties began discovery, and in August 2020 USCIS deposed Grey. During the deposition, USCIS asked about a criminal charge from 2016 for misprision of a felony. Grey's description of the events underlying that charge caused USCIS to dig deeper into the matter.

During his deposition, Grey recounted that on February 18, 2016, he was sitting in his car in the parking lot that he routinely used before ferrying by boat to work. Grey testified that when he exited his car, he saw Darnell Williams, one of his coworkers, lying on the ground. Because Williams was a frequent prankster, Grey at first thought he was joking. But when Williams asked for help, Grey realized he had been shot, ran to help him, and called 911. When the police arrived, Grey told them he found Williams on the ground and did not know who shot him. At his deposition, Grey insisted that he saw only one man—the victim. When USCIS asked why Grey was arrested for misprision of a felony, Grey responded that the shooter, another coworker, falsely told police that Grey was present for the shooting in an effort to reduce his own charge.

Finding Grey's story suspicious, USCIS contacted the Beaufort County Solicitor's office for more information about the 2016 charge. USCIS obtained a police report and recordings of two police interviews with Grey: one on February 19, 2016, the day after the incident, and one on February 29, 2016. Grey's first interview was largely consistent with his deposition testimony. But his story changed during the second interview after police confronted Grey about details of his account that were inconsistent with their continuing investigation and the confession of Allen Haynes. Grey then told police that when he arrived at the parking lot on February 18, Haynes was already there sitting in his car. When Grey exited his car to throw trash away, he and Haynes waved to each other. Then Grey saw Williams lean over Haynes's car window. Grey heard a gunshot and saw Williams fall to the ground. Then Grey heard Haynes make comments before he drove away. When the police asked Grey why he was not honest from the start, Grey admitted he had been scared.

B.

While USCIS investigated Grey's 2016 charges, Grey continued to pursue information about USCIS's marriage fraud investigation practices. USCIS produced documents responsive to Grey's FOIA request and redacted some of those documents in whole or in part. The district court ordered USCIS to file a *Vaughn* index[1] describing the grounds for its redactions. USCIS did so on July 6, 2020, and attached to the index a

---

[1] A *Vaughn* index describes an agency's justification for redacting or withholding particular material from a FOIA production with enough specificity to enable adjudication without in camera review of every redaction. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

redacted copy of its second document production. But due to an inadvertent clerical error, redactions on the last 305 pages of that production appeared as a thin black border around the relevant portions rather than an opaque black box covering the relevant portions. As a result, the reader could view the material USCIS intended to redact. USCIS then moved for partial summary judgment on Grey's FOIA claim without realizing the clerical error.

Both parties moved for partial summary judgment on September 30, 2020. Grey sought summary judgment on his FOIA claim and cited the inadvertently unredacted materials. USCIS sought summary judgment on Grey's naturalization claim based on his alleged dishonesty about the 2016 criminal charge. In its motion, USCIS relied upon the 2016 police report it obtained from the Beaufort County Solicitor's Office, which it had not disclosed to Grey during discovery. The Solicitor's Office provided the recorded police interviews only after the close of discovery, and USCIS produced those recordings to Grey and the court shortly thereafter.

Each party's motion caught the other by surprise. USCIS quickly moved for a protective order and asked the district court to seal the inadvertently unredacted documents until the court could rule on the merits of the agency's claimed FOIA exemptions. Grey moved to exclude the 2016 police report and recorded interviews because USCIS did not produce them during the discovery period. In the alternative, Grey asked the court to allow him reasonable discovery related to the 2016 criminal charge and shift to USCIS the fees and costs for this additional discovery.

The district court granted USCIS's motion to seal and for a protective order pending resolution of the FOIA claim on the merits. A few months later, after viewing the redacted

5

and withheld materials in camera, the district court concluded that the majority of the challenged redactions were proper under FOIA's law enforcement exemption, 5 U.S.C. § 552(b)(7). Accordingly, the district court granted summary judgment to USCIS on Grey's FOIA claim as to all documents properly withheld but ordered the agency to disclose the pages improperly withheld.

Turning to Grey's motion to exclude the 2016 police report and interviews, the district court agreed that USCIS's failure to disclose them during the discovery period violated Federal Rule of Civil Procedure 26 and warranted some sanction. But the court declined to exclude the police records, opting instead to reopen discovery and shift Grey's fees onto USCIS.

After Grey completed his additional discovery, the parties filed cross motions for summary judgment on his naturalization claim, and the district court ruled in USCIS's favor. The district court held that Grey could not demonstrate "good moral character"—a statutory prerequisite for naturalization—because he testified falsely at his deposition and, independently, because he lied to the police in 2016. 8 U.S.C. § 1427(a)(3). Accordingly, the court concluded that Grey was ineligible for naturalization.

Grey appealed the district court's FOIA ruling and its sealing and protective order as well as the court's decision to not exclude the police records and its grant of summary judgment to USCIS on Grey's naturalization claim. We have jurisdiction, *see* 28 U.S.C. § 1291, and consider each ruling in turn.

6

II.

A.

We begin with Grey's FOIA request. Whether the district court properly granted USCIS summary judgment on Grey's FOIA claim is a question of law we review de novo. *See Zaid v. Dep't of Just.*, 96 F.4th 697, 703 (4th Cir. 2024). Grey challenges the district court's conclusion that USCIS was entitled to redact or withhold certain training materials under FOIA's law enforcement exemption at 5 U.S.C. § 552(b)(7)(E). The burden was on USCIS to prove that Exemption 7(E) applied to those materials. *See Zaid*, 96 F.4th at 704; 5 U.S.C. § 552(a)(4)(B).

Pursuant to Exemption 7(E), FOIA's command that government agencies provide documents upon request does not apply to

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7). As relevant here, Grey sought "marriage fraud training materials, policies, [and] examples." J.A. 2050. After in camera review, the district court upheld most of USCIS's redactions to those materials under Exemption 7(E).[2]

Grey contends the redacted materials are not exempt from disclosure for three reasons. First, Grey asserts that, to be "compiled for law enforcement purposes," records

---

[2] USCIS does not appeal that portion of the district court's judgment rejecting some of its redactions and ordering disclosure.

7

must originate from or be used in a law enforcement investigation, not officer training. 5 U.S.C. § 552(b)(7). We disagree. The exemption is not limited to records compiled for law enforcement *proceedings*; it extends more broadly to records compiled for law enforcement *purposes*. Training officers how to enforce the law is a "law enforcement purpose." *See Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002) ("[Exemption 7] protect[s] both investigatory and non-investigatory materials, including law enforcement manuals and the like."); *ACLU of Mass. v. U.S. Dep't of Homeland Sec.*, 707 F. Supp. 3d 77, 85–86 (D. Mass. 2023) (holding that pages from a handbook instructing DHS agents how to determine whether an individual is a gang member were properly redacted under Exemption 7(E)). A record with otherwise exempt content does not become subject to disclosure because it is used to train rather than to enforce the law directly. After all, Exemption 7(E) protects records that "would disclose techniques and procedures for law enforcement investigations or prosecutions," regardless of whether the agency uses those records to guide active investigations or train officers how to investigate. 5 U.S.C. § 522(b)(7)(E). The sole case on which Grey relies does not hold to the contrary or address training materials at all. *See Allnutt v. U.S. Dep't of Just.*, 99 F. Supp. 2d 673, 680 (D. Md. 2000), *aff'd sub nom. Allnut v. Handler*, 8 Fed. App. 225 (4th Cir. 2001).

Nor are we persuaded by Grey's argument that these materials were used to train Fraud Detection and National Security Immigration Officers, who Grey alleges are investigators, not enforcement officers. Investigation is an important component of enforcing the law and thus constitutes a law enforcement purpose. Indeed, Exemption 7(E) specifically applies to "law enforcement investigations." 5 U.S.C. § 552(b)(7)(E).

8

Second, Grey argues the materials in question do not fall within Exemption 7(E) because USCIS's techniques and procedures are not secret.  Courts have consistently held that records may not be shielded from view on the ground that they "would disclose techniques and procedures," 5 U.S.C. § 552(b)(7)(E), if such techniques and procedures are already well known to the public.  *See Fogg v. IRS*, 106 F.4th 779, 787 (8th Cir. 2024); *Broward Bulldog, Inc. v. U.S. Dep't of Just.*, 939 F.3d 1164, 1191 (11th Cir. 2019); *Rugiero v. U.S. Dep't of Just.*, 257 F.3d 534, 551 (6th Cir. 2001); *Davin v. U.S. Dep't of Just.*, 60 F.3d 1043, 1064 (3d Cir. 1995); *Rosenfeld v. U.S. Dep't of Just.*, 57 F.3d 803, 815 (9th Cir. 1995); *see also Kowal v. U.S. Dep't of Just.*, 107 F.4th 1018, 1033 (D.C. Cir. 2024) (applying this principle).  And according to Grey, USCIS's publicly available policy manual identifies all the techniques and procedures the agency uses to identify fraud, including interviews, site visits, database searches, and open source searches.

But "even for well-known techniques or procedures, Exemption 7(E) protects information that would reveal facts about such techniques or their usefulness that are not generally known to the public," including details of their use or execution, "as well as other information when disclosure could reduce the effectiveness of such techniques." *Broward Bulldog*, 939 F.3d at 1191; *Fogg*, 106 F.4th at 787; *see also, e.g.*, *N.Y. C.L. Union v. Dep't of Homeland Sec.*, 771 F. Supp. 2d 289, 292 (S.D.N.Y. 2011) (public knowledge that agency used license plate readers did not require disclosure of their locations or specific capabilities); *Blanton v. U.S. Dep't of Just.*, 63 F. Supp. 2d 35, 49–50 (D.D.C. 1999) (public knowledge that FBI used polygraphs did not require disclosure of specifics like the pattern and sequence of questions asked during polygraph examinations).  Grey acknowledges that

9

the redacted training materials "may elaborate on" USCIS's techniques and procedures for uncovering fraud, and he is simply incorrect that Exemption 7(E) does not apply "to the details of well-known techniques and procedures" if those details are not themselves generally known.  Opening Br. 17.

Third, Grey claims that disclosure of USCIS's investigatory techniques and procedures cannot "reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  His argument fails because the "circumvention" requirement does not apply to "techniques and procedures."

Exemption 7(E) protects law enforcement records and information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, *or* would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  *Id.* (emphasis added).  "[B]asic rules of grammar and punctuation dictate that the qualifying phrase ['if such disclosure could reasonably be expected to risk circumvention of the law'] modifies only the immediately antecedent 'guidelines' clause and not the more remote 'techniques and procedures' clause," which precedes the comma and the "or" separating the two alternative clauses.  *Allard K. Lowenstein Int'l Hum. Rts. Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010); *see also Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (explaining "the grammatical 'rule of the last antecedent'").  Accordingly, we join our sister circuits in holding that Exemption 7(E) protects information that would disclose law enforcement techniques and procedures without requiring the government to show that disclosure can reasonably be expected to risk circumvention of the law.  *See Fogg*, 106

10

F.4th at 787–788; *Lowenstein Project*, 626 F.3d at 681; *Transgender L. Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771, 784–785 (9th Cir. 2022). *But see Pub. Emps. for Envir. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 204 n.4 (D.C. Cir. 2014) ("This Court has applied the 'risk circumvention of the law' requirement both to records containing guidelines and to records containing techniques and procedures."). Because the parties agree the redacted and withheld information here concerns USCIS techniques and procedures, not guidelines, the agency was not required to make such a showing and Grey's final challenge to the district court's FOIA ruling fails.

B.

Grey has also appealed the district court's decision sealing the inadvertently unredacted FOIA materials and imposing a protective order pending the court's decision on USCIS's FOIA compliance. We need not evaluate the merits of that provisional order because it was superseded by the district court's FOIA ruling a few months later. A decision from this Court about the lawfulness of that initial order would in no way change Grey's (or the public's) access to the contested documents.

The sealing and protective order dictated how the parties were to handle roughly 300 pages of USCIS documents for a brief time. As the district court explained,

> [T]he seal the court places on the disclosed records is not absolute. . . . [T]he court will, in short order, determine whether plaintiff, and the public at large, can access the disclosed records. Until that time, the seal will preserve the status quo that existed prior to defendants' inadvertent disclosure of the records.

J.A. 2045. Similarly, regarding the protective order, the court noted

11

> that plaintiff may in fact be able to rely upon and disseminate the records after the court's resolution of defendants' summary judgment motion, if the court finds that the records are wrongfully redacted or withheld. Accordingly, the court orders plaintiff to destroy or return all copies of the inadvertently disclosed records and precludes plaintiff's counsel from relying on the disclosed records in any filing in this case until the court resolves defendants' summary judgment motion on plaintiff's FOIA claim on the merits.

J.A. 2048 (internal citation omitted).  Grey challenges only the continued nondisclosure and protection of the inadvertently unredacted documents.[3]  But by its own terms, the sealing and protective order was no longer operative after the district court resolved Grey's FOIA claim on the merits.  At that point, the district court's summary judgment ruling governed the disclosure or nondisclosure of all USCIS's responsive documents, including the pages previously subject to the sealing and protective order.  Furthermore, the district court upheld USCIS's redactions to the inadvertently disclosed pages under FOIA, so the redactions now are authorized not by the court's seal but by the agency's legal authority to file a redacted document in the first instance.

Accordingly, the sealing and protective order no longer has any force or effect. Grey's appeal of that order is rather like a litigant appealing a preliminary injunction after a permanent injunction has issued.  Much like the subsequent entry of a permanent injunction generally moots a challenge to the preliminary order, the district court's order granting summary judgment to USCIS on Grey's FOIA claim moots his challenge to the provisional sealing and protection of those documents.  *See Su v. Ascent Construction*, 104

---

[3] He does not contend, for example, that his arguments to the district court in the interval between the protective order and the FOIA ruling were hindered because he could not rely on the inadvertently unredacted materials in his filings.

F.4th 1240, 1244 (10th Cir. 2024). No decision we could issue on Grey's appellate challenge to that provisional order would "have any practical effect in the real world" because the court's FOIA ruling prevents access to the redacted materials. *Eden, LLC v. Justice*, 36 F.4th 166, 170 (4th Cir. 2022) (internal quotation marks omitted). Because Grey's appeal of the sealing and protective order is moot, we must decline to address it. *See id.* at 169–170.

## III.

We turn now to the district court's ruling on Grey's naturalization claim. On appeal, Grey challenges the court's denial of his motion to exclude the 2016 police records and the court's order granting summary judgment to USCIS on this claim.

## A.

We may quickly dispense with Grey's criticism of the discovery order. Federal Rule of Civil Procedure 37 gave the district court discretion to sanction USCIS's delayed disclosure by reopening discovery and shifting fees "instead of" excluding the belatedly disclosed evidence. Fed. R. Civ. P. 37(c)(1). The court chose to do so because, although the untimely disclosure was not substantially justified or harmless, USCIS's delay was at least partly explained by Grey's unexpected dishonesty during his deposition. And given that Grey bears the burden to prove good moral character up to the date he is admitted for citizenship, the district court concluded the evidence was relevant to his application and

13

should be admitted.  *See* 8 U.S.C. § 1427(a)(3), (e).  Grey's arguments don't demonstrate that the district court abused its discretion.[4]

B.

We review de novo the district court's decision to grant summary judgment to USCIS on Grey's naturalization claim.  *Phan v. Holder*, 667 F.3d 448, 451 (4th Cir. 2012).  Summary judgment is appropriate only if, after viewing the evidence in the light most favorable to Grey, there is "no genuine dispute as to any material fact and [USCIS] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Phan*, 667 F.3d at 451.

To qualify for naturalization, an applicant must show, among other things, that he is "a person of good moral character."  8 U.S.C. § 1427(a)(3); *see id.* § 1427(e).  By statute, "[n]o person shall be regarded as, or found to be, a person of good moral character who . . . has given false testimony for the purpose of obtaining" immigration or naturalization benefits.  8 U.S.C. § 1101(f)(6); *see* 8 C.F.R. § 316.10(b)(2)(vi) ("An applicant shall be found to lack good moral character if during the statutory period the applicant . . . [h]as given false testimony to obtain any benefit from the [Immigration and Nationality Act], if the testimony was made under oath or affirmation and with an intent to obtain an immigration benefit . . . .").  False testimony need not be material to the immigration benefits determination to be disqualifying.  *See* 8 C.F.R. § 316.10(b)(2)(vi); *Kungys v.*

---

[4] Grey's passing hearsay objection is meritless.  *See* Fed. R. Evid. 803(6).  And, contrary to his assertion, "recordation of historical events beyond the [criminal] charge itself" are not sealed records under Section 17-1-40 of the South Carolina Code.  *Compton v. S.C. Dep't of Corr.*, 709 S.E.2d 639, 643 (S.C. 2011).

14

*United States*, 485 U.S. 759, 779–780 (1988) (explaining that the statute itself contains no "materiality requirement").

The district court concluded that Grey lacked good moral character because he gave false testimony during his deposition in this case to obtain an immigration benefit.[5] We agree. In his deposition, Grey testified under oath that on February 18, 2016, he saw only the victim—no one else. S.A. 149 ("Q: Did you see them both? A: No, I only saw the one guy. The one guy that got shot, I only saw him at the time."). He also said he had no knowledge about what happened to the victim. S.A. 146 ("I don't know what happened prior to what happened with them, and getting out of my car trying to catch the boat I saw one guy was laying on the ground."); *see also* S.A. 148 ("Q: What was the first thing you saw? A: So when I get out of my car . . . I saw the guy kind of lay down on the ground kind of limp over."). Grey represented that he "wasn't there" when the victim was shot and that the only possible reason the shooter would say otherwise was because he was seeking a lesser charge. S.A. 147; *see also* S.A. 151 ("Q: Were you present when Alan Haynes shot Darnell Willaims? A: No."). That testimony cannot be reconciled with Grey's police interview on February 29, 2016. In that interview, Grey revealed that not only did he and Haynes, the shooter, see each other before the shooting, he also saw Williams lean

---

[5] The court alternatively concluded that Grey lacked good moral character because he committed an unlawful act—misprision of a felony in 2016—that adversely reflected upon his moral character. *See* 8 C.F.R. § 316.10(b)(3)(iii). Because we agree that Grey gave false testimony to obtain an immigration benefit, we need not reach this alternative ground.

15

over Haynes's car, heard the gunshot, and saw Williams fall to the pavement. He then heard Haynes make comments before driving away.

Faced with these inconsistencies, Grey does not dispute the truthfulness of his February 29, 2016 police interview. Instead, he claims his deposition testimony was "not untrue" but was merely not "as complete as" his police interview. Opening Br. 27. We reject Grey's argument. As the examples quoted above demonstrate, Grey was not merely "[i]ncomplete and ambiguous" at his deposition, Opening Br. 27; he made several undeniably false statements.

Lastly, Grey asserts that even if he testified falsely during his deposition in this case, "there is no evidence" he did so with "contemporaneous intent to obtain an immigration benefit." Opening Br. 27. That argument is hard to take seriously when the entire point of Grey's lawsuit was to obtain naturalization—an immigration benefit. His deposition was in service of his claim for citizenship, which the court would decide based on all the evidence, including his deposition testimony. Moreover, "the burden is on the . . . applicant to show his eligibility for citizenship in every respect." *INS v. Pangilinan*, 486 U.S. 875, 886 (1988) (internal quotation marks omitted). It was therefore incumbent upon Grey to identify evidence of a different motive, rather than demand that USCIS show he subjectively sought an immigration benefit. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986). The district court did not err in granting summary judgment for USCIS on Grey's claim for naturalization.

16

IV.

After careful review, we agree with the district court that Grey is not eligible for citizenship.  We also agree with the district court's determination that USCIS was entitled to withhold certain information in its responsive FOIA documents based on Exemption 7(E) of that statute.  Accordingly, the district court's judgment is

*AFFIRMED*.